LOUIS PETKOVICH, JR. AND JULIE D. PETKOVICH     *     NO. 2021-CA-0448

    *

VERSUS           COURT OF APPEAL

    *

FRANKLIN HOMES, INC., GULF COAST MOBILE HOMES, INC., LANDRY MOBILE HOME TRANSPORTERS, INC., AND NTA, INC.       FOURTH CIRCUIT

    *

          STATE OF LOUISIANA

   * * * * * * *

APPEAL FROM
25TH JDC, PARISH OF PLAQUEMINES
NO. 60-790, DIVISION "B"
Honorable Michael D. Clement,
* * * * * *
**Chief Judge Terri F. Love**
* * * * * *

(Court composed of Chief Judge Terri F. Love, Judge Roland L. Belsome, Judge Dale N. Atkins)

Wayne R. Maldonado
John C. Henry
Warren J. Greenwood, Jr.
Karina Shareen
Brett F. Willie
UNGARINO & MALDONADO, LLC
3850 North Causeway Boulevard, Ste. 1280
Metairie, LA 70002

    COUNSEL FOR GULF COAST MOBILE HOMES, INC.

Lamont P. Domingue
VOORHIES & LABBE
700 St. John St., Ste. 500
P. O. Box 3527
Lafayette, LA 70502—3527

    COUNSEL FOR NTA, INC. AND FRANKLIN HOMES, INC.

John William Redmann
Edward L. Moreno
Travis J. Causey, Jr.
Cristian A. Galleguillos
LAW OFFICE OF JOHN W. REDMANN, LLC

1101 Westbank Expressway
Gretna, LA 70053

      COUNSEL FOR PLAINTIFFS, LOUIS PETKOVICH, JR. AND JULIE D. PETKOVICH

Paula M. Wellons
Jason D. Bone
TAYLOR WELLONS POLITZ & DUHE, APLC
1555 Poydras Street, Suite 2000
New Orleans, LA 70112

      COUNSEL FOR LANDRY MOBILE HOME TRANSPORTERS, INC.


**AFFIRMED IN PART; REVERSED IN PART; WRIT GRANTED IN PART; WRITS DENIED**

**September 22, 2022**

*TFL*

*RLB*

*DNA*

This appeal arises from the purchase, transportation, and permanent affixing of a new modular home. Plaintiffs sustained vast damages to their modular residence during Hurricane Isaac. Plaintiffs filed suit, over five years after purchasing the home, against the seller, manufacturer, transporter, and engineering firm associated with the construction, sale, and transportation of their new modular home contending there were vices and defects and that the home was advertised to withstand 140 mile per hour winds. Defendants filed exceptions of peremption/prescription and no cause of action, as well as motions for summary judgment. The trial court granted the exceptions of peremption/prescription and found that all of plaintiffs' claims were perempted and prescribed except for those relating to fraud and intentional misrepresentation. Both plaintiffs and defendants appealed.

After review and considering this Court's jurisprudence, we find the trial court did not err by granting defendants' exceptions of peremption and prescription as to all claims except those relating to fraud and intentional misrepresentation.

We convert the appeals of defendants to applications for supervisory review. As the plaintiffs' fraud and intentional misrepresentation claims against the transporter were based in deficient performance, the claims were perempted. Thus,

1

we grant the transporter's writ and dismiss the plaintiffs' remaining claims against it.

We find the plaintiffs sufficiently pled claims for fraud and intentional misrepresentation against the manufacturer and engineering firm. As such, as to the exceptions of no cause of action, their writs are denied. Moreover, we find genuine issues of material fact remain as to the plaintiffs' claims of fraud and intentional misrepresentation against seller, manufacturer, and engineering firm. Questions surrounding credibility, juxtaposed expert testimony, intent, and motive are not suitable for summary judgment. Therefore, we deny their writs regarding their motions for summary judgment.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Louis and Julie Petkovich lived in their home in Plaquemines Parish when Hurricane Katrina struck, causing catastrophic destruction, in August 2005. In an effort to rebuild, they visited Gulf Coast Mobile Homes, Inc. ("Gulf Coast") seeking a new home for permanent placement on their land.

On January 9, 2007, the Petkovichs purchased a new modular home, manufactured by Franklin Homes, Inc. ("Franklin") and sold by Gulf Coast. Their new home was transported to their location by Landry Mobile Home Transporters, Inc. ("Landry") and was affixed to a permanent concrete foundation. They moved in approximately May 24, 2007.

On August 28, 2012, Hurricane Isaac struck, causing extensive damage to the Petkovichs' home. On August 28, 2013, the Petkovichs filed a Petition for Damages against Gulf Coast, Franklin, Landry, and NTA, Inc. (the engineering firm retained by Franklin to certify engineering specifications) (collectively "Defendants") alleging claims based in redhibition, Louisiana unfair trade

2

practices, negligence, misrepresentation, product liability, detrimental reliance, breach of contract, and fraud.[1]  The Petkovichs asserted that they purchased their new home because it was designed and built to withstand winds up to 140 miles per hour.

After filing suit, numerous exceptions and motions were filed.  Namely, Gulf Coast filed Exceptions of Peremption and Prescription and a Motion for Summary Judgment regarding the Petkovichs' fraud and intentional misrepresentation claims.  NTA filed Exceptions of Peremption and Prescription, as well as an Exception of No Cause of Action, which was followed by a Motion for Summary Judgment.  Franklin Homes also filed Exception of Peremption, Prescription, and No Cause of Action, as well as a Motion for Summary Judgment. Landry filed an Exception of Peremption, an Exception of Peremption specifically targeting the Petkovichs' LUTPA claims, and a Motion for Summary Judgment.

On March 11, 2021, the trial court granted Defendants' Exceptions of Peremption and Prescription in part as to all of the Petkovichs' claims except for those based in fraud and intentional misrepresentation.  The Petkovichs' claims, besides those based in fraud and intentional misrepresentation, were dismissed with prejudice.  The Exceptions of No Cause of Action filed by Franklin and NTA were denied.  Lastly, the trial court denied Defendants' Motions for Summary Judgment.  Defendants filed a Motion to Designate the judgment as final.  The trial court designated the March 11, 2021 judgment as final on March 30, 2021.  The Petkovichs and Defendants all filed motions for devolutive appeals, which the trial court granted.

---

[1] The Petkovichs brought one of approximately ten lawsuits against some of these modular home defendants following Hurricane Isaac.

The Petkovichs appealed first, contending that the trial court erred by granting the Exceptions of Peremption and Prescription and dismissing all of their claims except for fraud and intentional misrepresentation. Defendants appealed asserting the trial court erred by denying their exceptions in part, regarding fraud and intentional misrepresentation, and for denying their Motions for Summary Judgment. NTA and Franklin also maintained that the trial court erroneously denied their Exceptions of No Cause of Action as to fraud and intentional misrepresentation.

## I. PETKOVICHS' APPEAL

The Petkovichs contend that the trial court erred by granting Defendants' Exceptions of Peremption and Prescription based upon La. R.S. 9:3141, *et seq*.; La. R.S. 51:912.1, *et seq*.; La. R.S. 9:2772; and La. R.S. 51:1401, *et seq*. They maintain that their claims regarding: redhibition, Louisiana unfair trade practices, negligence, product liability, detrimental reliance, and breach of contract were timely.

### STANDARD OF REVIEW

The exceptions of peremption and prescription are peremptory exceptions. La. C.C.P. art. 927. "The function of the peremptory exception is to have the plaintiff's action declared legally nonexistent, or barred by effect of law, and hence this exception tends to dismiss or defeat the action." La. C.C.P. art. 923.

### Peremption

"Peremption is a period of time fixed by law for the existence of a right. Unless timely exercised, the right is extinguished upon the expiration of the peremptive period." La. C.C. art. 3458. "Except as otherwise provided by law, peremption may not be renounced, interrupted, or suspended." La. C.C. art. 3461.

4

"[T]he party pleading peremption bears the burden of proof at the trial of the peremptory exception of peremption." *Thrasher Const., Inc. v. Gibbs Residential, L.L.C.*, 15-0607, p. 8 (La. App. 4 Cir. 6/29/16), 197 So. 3d 283, 289. "[I]f peremption is evident on the face of the pleadings, then the burden shifts to the other party to show that the claim is not perempted." *Id.* "Courts strictly construe peremptive statutes against peremption and in favor of the claim." *McGaha v. Franklin Homes, Inc.*, 21-0244, p. 29 (La. App. 4 Cir. 2/4/22), 335 So. 3d 842, 860, *writ denied*, 22-00374 (La. 4/26/22), 336 So. 3d 897.

"Appellate courts review legal questions, like the denial of peremptory exceptions, *de novo.*" *Titus v. Wilson*, 15-0575, p. 3 (La. App. 4 Cir. 12/4/15), 216 So. 3d 928, 931. This Court elaborated further as follows:

> If evidence is introduced at the trial on a peremptory exception, appellate courts review the entire record "to determine whether the trial court was manifestly erroneous with its factual conclusions." *Thrasher Constr. Inc. v. Gibbs Residential, L.L.C.*, 2015-0607, pp. 6-7 (La. App. 4 Cir. 6/29/16), 197 So.3d 283, 289 (quoting *Metairie III v. Poche' Constr., Inc.*, 2010-0353, p. 4 (La. App. 4 Cir. 9/29/10), 49 So.3d 446, 449). The *Thrasher* Court further noted:
>
>> If the trial court's findings are reasonable in light of the entire record, then the appellate court may not reverse even though it would have weighed the evidence differently had it been sitting as the trier of fact. *Rando v. Anco Insulations Inc.*, [20]08-1163, p. 20 (La. 5/22/09), 16 So.3d 1065, 1082, citing *Stobart v. State, through DOTD*, 617 So.2d 880, 882-83 (La. 1993). As further explained by the Louisiana Supreme Court,
>>
>>> Under the manifest error standard, in order to reverse a trial court's determination of a fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous.

5

> *Lomont v. Bennett*, [20]14-2483, p. 17 (La. 6/30/15), 172 So.3d 620, 632-33.
>
> *Id.*, 2015-0607,p. 7, 197 So.3d at 289.

*McGaha*, 21-0244, pp. 29-30, 335 So. 3d at 860-61.

### Prescription

"Generally, the party raising the exception of prescription bears the burden of proof, unless prescription is evident from the face of the pleadings, in which case the plaintiff bears the burden of showing that the action has not prescribed." *Hardy v. Easy T.V. & Appliances of Louisiana, Inc.*, 01-0025, p. 7 (La. App. 4 Cir. 12/12/01), 804 So. 2d 777, 782. Much like for the exception of peremption, this Court opined:

> If evidence is introduced at the hearing on the peremptory exception of prescription, the district court's findings of fact are reviewed under the manifest error-clearly wrong standard of review. *Rando v. Anco Insulations, Inc.*, 08-1163, p. 20 (La.5/22/09), 16 So.3d 1065, 1082. If there is as an absence of evidence, the exception of the prescription must be decided upon the properly pleaded material allegations of fact asserted in the petition, and those alleged facts are accepted as true. *Trust for Melba Margaret Schwegmann*, 51 So.3d at 742. Further, in reviewing a peremptory exception of prescription, appellate courts strictly construe the statutes against prescription and in favor of the claim. *Id.* Of the possible constructions of a prescriptive or preemptive statute, the one that maintains enforcement of the claim or action, rather than the one that bars enforcement should be adopted. *Rando*, 16 So.3d at 1083.

*Ames v. Ohle*, 11-1540, pp. 5-6 (La. App. 4 Cir. 5/23/12), 97 So. 3d 386, 390-91.

### DISCUSSION

The trial court's reasons for judgment summarized the Petkovichs' issues on appeal and corresponding legal precepts, at this pre-trial juncture, as follows:

> La. C.C. art. 3458 defines peremption as "a period of time fixed by law for the existence of a right." The right is extinguished upon the expiration of the

6

peremptive period unless it is timely exercised. Id. A peremption may not be renounced, interrupted, or suspended. La. C.C. art. 3461. Peremptive statutes are to be strictly construed against peremption and in favor of the claim. Rando v. Anco Insulations Inc., 2008-1163 (La. 5/22/09), 16 So.3d 1065, 1083.

Defendants base their peremption exception on the New Home Warranty Act (NHWA), La. R.S. 9:3141 et seq. and the New Manufactured and Modular Home Warranty Act (NMMHWA), La. R.S. 51:912.1 et seq. Defendants further argue that plaintiffs' claims are perempted under La. R.S. 9:2772, which governs the peremptive period for actions involving deficiencies in surveying, design, supervision, or construction of an immovable or an improvement. Defendants assert separate peremption exception regarding plaintiffs' claim based on the Louisiana Unfair Trade Practices Act (LUTPA), La. R.S. 51:1409.

La. R.S. 9:3146 of the NHWA states that any action to enforce a warranty is subject to a peremptive period of thirty days after the applicable time period in La. R.S. 9:3144. Subsection A of La. R.S. 9:3144 provides:

Subject to the exclusions provided in Subsection B of this Section, every builder warrants the following to the owner:

(1) One year following the warranty commencement date, the home will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.

(2) Two years following the warranty commencement date, the plumbing, electrical, heating, cooling, and ventilating systems exclusive of any appliance, fixture, and equipment will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.

(3) Five years following the warranty commencement date, the home will be free from major structural defects due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.

7

The warranty commencement date is defined in La. R.S. 9:3143(7) as the date that legal title to the home is conveyed to its initial purchaser or the date that the home is first occupied, whichever occurs first.

Similarly to the NHWA, La. R.S. 51:912.6 of the NMMHWA also provides that an action to enforce a warranty is subject to a peremptive period of thirty days after the expiration of the appropriate time period set forth in La. R.S. 51:912.4. La. R.S. 51:912.4(A) also has the same one-year, two-year, and five-year time periods for builder's warranties; and La. R.S. 51:912.3 has the same definition of the warranty commencement date. Both the NHWA and NMMHWA state that they each provide the exclusive remedies, warranties, and peremptive periods between the builder and the owner relative to the construction of homes. See La. R.S. 9:3150; La. R.S. 51:912.10.

In Stutts v, Melton, 2013-0557 (La. 10/15/13), 130 So.3d 808, the Supreme Court held that while the NHWA provides the exclusive remedies and preemptive periods, the NHWA does not immunize as seller from other contract law provisions the seller is to follow in connection with the sale of a home. The court stated that an action claiming that the seller made a fraudulent misrepresentation is not a claim relative to home construction, but a claim that the seller has knowingly misrepresented that the home has a quality that he knows it does not have.

Defendants also base their exceptions of peremption and/or prescription on La. R.S. 9:2772(A) which provides:

> Except as otherwise provided in this Subsection, no action, whether ex contractu, ex delicto, or otherwise, including but not limited to an action for failure to warn, to recover on a contract, or to recover damages, or otherwise arising out of an engagement of planning, construction, design, or building immovable or movable property which may include, without limitation, consultation, planning, designs, drawings, specification, investigation, evaluation, measuring, or administration related to any building, construction, demolition, or work, shall be brought against any person performing or furnishing land surveying services, as such term is defined in R.S. 37:682, including but not

8

limited to those services preparatory to construction, or against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of immovables, or improvement to immovable property, including but not limited to a residential building contractor as defined in R.S. 37:2150.1:

(l)(a) More than five years after the date of registry in the mortgage office of acceptance of the work by owner.

(b) If no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, in whole or in part, more than five years after the improvement has been thus occupied by the owner.

Subsection H of La. R.S. 9:2772 provides:

H. (1) The peremptive period provided by this Section shall not apply to an action to recover on a contract or to recover damages against any person enumerated in Subsection A of this Section, whose fraud has caused the breach of contract or damages sued upon. The provisions of this Subsection shall be retroactive.

(2) In any action in which fraud is alleged, that issue shall be decided by trial separate from and prior to the trial of any or all other issues. However, if fraud is alleged in nonresidential contracts in an action commenced after the expiration of the five-year period provided by this Section, and the court determines that the allegation was brought in bad faith and no fraud is found, then the party who made the allegation shall be liable for court costs and attorney fees. If fraud is proven, then the party that has committed the fraud shall be liable for court costs and attorney fees.

(3) Fraud, as used in this Section, shall have the same meaning as provided in Civil Code Article 1953.

In Thrasher Const. Inc, v. Gibbs Residential, 2015-0607 (La. App. 4 Cir. 6/29/16), 197 So.3d 283, writ denied, 2016-1453 (La. 11/15/16), 209 So.3d 779, the Fourth Circuit stated that the five-year peremptive period in La. R.S. 9:2772 would not apply to claims in which the alleged breach of contract or damages were caused by

fraud.

Therefore, the exceptions of peremption and/or prescription based on La. R.S. 9:3141 et seq., La. R.S. 51:912.1 et seq., and La. R.S. 9:2772 are overruled as they pertain to the fraud and intentional misrepresentation claims that the modular home could withstand winds of up to 140 miles per hour. The exceptions are otherwise sustained as to claims that are not based on fraud and intentional misrepresentation.

Plaintiffs have also asserted a claim based on La. R.S. 51:1401 et seq., the Louisiana Unfair Trade Practices Act (LUTPA). La. R.S. 51:1409(E) states that a private action under LUTPA shall be subject to a liberative prescription of one year running from the time of the transaction or act which gave rise to the cause of action. Subsection A provides, in part:

> Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually but not in a representative capacity to recover actual damages.

In Bottinelli Real Estate, LLC v. Johns Manville, Inc.. 2019-0619 (La. App. 4 Cir. 12/27/19), 288 So.3d 179, the Fourth Circuit held that a claim under LUTPA was subject to a one-year prescriptive period, which was peremptive. Because plaintiffs' LUTPA claims were asserted more than one year after any alleged unfair trade practice (which would had to have occurred during the home purchase process in 2007), the exception of peremption as to the LUTPA claim is sustained.

Subsequent to the trial court's judgment, this Court addressed these exact issues in *McGaha*, 21-0244, p. 1, 335 So. 3d at 842. *McGaha* is summarized below:

This appeal involves tort claims brought by David L. McGaha (hereinafter "Mr. McGaha") and Melissa B. McGaha (hereinafter "Mrs. McGaha") concerning alleged defects in their modular home. Mr. McGaha and Mrs. McGaha (hereinafter collectively "Plaintiffs") filed suit against Gulf Coast Mobile Homes, Inc. (hereinafter

10

"Gulf Coast"); Franklin Homes, Inc. (hereinafter "Franklin Homes"); Landry Mobile Home Transporters, Inc. (hereinafter "Landry Transporters"); and NTA, Inc. (hereinafter "NTA"). Gulf Coast, Franklin Homes, Landry Transporters, and NTA (hereinafter collectively "Defendants") filed various exceptions and motions for summary judgment that the trial court granted in part and denied in part. Gulf Coast now seeks review of the trial court's judgment, which denied its motion for summary judgment regarding claims of fraud and intentional misrepresentation asserted by Plaintiffs. Additionally, Plaintiffs seek review of that portion of the trial court's judgment that granted Defendants' various exceptions. Further, Franklin Homes filed an answer to the appeal and seeks review of the trial court's judgment denying its exception in part as to Plaintiffs' claims of fraud and intentional misrepresentation.

*  *  *

## B. Redhibition Claim

  . . . Louisiana Civil Code Article 2534(A) provides:

> The action for redhibition against a seller who did not know of the existence of a defect in the thing sold and the action asserting that a thing is not fit for its ordinary or intended use prescribe in two years from the day of delivery of the thing to the buyer or one year from the day the defect or unfitness was discovered by the buyer, whichever occurs first.

However, if the action for redhibition is brought "against a seller who knew, or is presumed to have known, of the existence of a defect in the thing sold prescribes in one year from the day the defect was discovered by the buyer or ten years from the perfection of the contract of sale, whichever occurs first." La. C.C. art. 2534(B).

*  *  *

Plaintiffs herein assert that Franklin Homes, as the manufacturer, is presumed to have knowledge of the alleged defects in their home. They contend prescription did not begin to run until they discovered the defects after Hurricane Isaac.

Plaintiffs argue that La. C.C. art. 2540 applies to its claim against NTA. Louisiana Civil Code Article 2540 provides that "[w]hen more than one thing are sold together as a whole so that the buyer would not have bought one thing without the other or others, a redhibitory defect in one of such things gives rise to redhibition for the whole." La. C.C. art. 2540. Plaintiffs

11

allege the contract for construction of their home included a certification the home met applicable building standards; and they contend a home lacking such a certification had no practical use to them. Further, Plaintiffs argue this Court should consider all components of the home, including the certification, as a single unit for purposes of redhibition.

Additionally, Plaintiffs assert that Gulf Coast had a significant role in the installation of their home. Thus, Plaintiffs contend Gulf Coast is presumed to know of the defects.

\* \* \*

We note the argument that the contract in this case was a contract to build or a construction contract has merit. Nonetheless, Franklin Homes, NTA, and Gulf Coast filed exceptions of peremption and/or prescription to the claim of redhibition, which the trial court granted.

\* \* \*

The record contains sufficient evidence for the trial court to conclude Plaintiffs' home lacked a defect because it performed as expected during a category 1 hurricane. Thus, when viewing the October 23, 2006 Gulf Coast contract as a contract of sale, evidence exists to support a finding that Gulf Coast, Franklin Homes, and NTA lacked knowledge of a defect in Plaintiffs' home because it performed as expected in a category 1 hurricane. The peremptive period in such a situation is set forth in La. C.C. art. 2534(A). Under that provision, an action for redhibition prescribes "two years from the day of delivery of the thing to the buyer or one year from the day the defect or unfitness was discovered by the buyer, whichever occurs first." La. C.C. art. 2534(A).

\* \* \*

The trial court's judgment granting the exceptions of peremption and prescription as to the claim of redhibition against Gulf Coast, Franklin Homes, and NTA, is reasonable in light of the entire record. Thus, the trial court did not manifestly err in granting the exceptions of peremption and prescription as to the claim of redhibition.

## C. Remaining Tort Claims

In their appellant brief, Plaintiffs contend the trial court erred in granting the exception of peremption or prescription as to their claims for violation of LUTPA, negligence, negligent misrepresentation, violation of LPLA, detrimental reliance, and breach of contract. They assert that the prescriptive period found in La. C.C. art.

3493 applies to the remaining tort claims. Louisiana Civil Code Article 3493 states that "[w]hen damage is caused to immovable property, the one year prescription commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage." Plaintiffs insist they could not acquire knowledge of the damage until Hurricane Isaac.

### 1. <u>New Home Warranty Act</u>

In their briefs, Defendants separated the remaining claims and argued each remaining claim was preempted or prescribed. First, they relied on the peremptive period provided in the New Home Warranty Act (hereinafter "NHWA"). Notably, the NHWA sets forth exclusive remedies, warranties, and peremptive periods between a builder and an owner of home construction. La. R.S. 9:3141-50. The NHWA defines " '[b]uilder' [as] any person, corporation, partnership, limited liability company, joint venture, or other entity which constructs a home, or addition thereto, including a home occupied initially by its builder as his residence." La. R.S. 9:3143(1). The NHWA further provides:

> (3) "Home" means any new structure designed and used only for residential use, together with all attached and unattached structures, constructed by the builder whether or not the land was purchased from the builder. Such term includes structures containing multiple family dwellings or residences.
>
> (4) "Initial purchaser" means any person for whom a home is built or the first person to whom a home is sold upon completion of construction.

La. R.S. 9:3143(3)-(4).

The NHWA applies to Franklin Homes as a builder; Plaintiffs as initial purchasers; and their modular home as a new home. Pursuant to the NHWA, Franklin Homes warranted the following to Plaintiffs:

> (1) One year following the warranty commencement date, the home will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.
>
> (2) Two years following the warranty commencement date, the plumbing, electrical, heating, cooling, and ventilating systems exclusive of any appliance, fixture, and

13

equipment will be free from any defect due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.

> (3) Five years following the warranty commencement date, the home will be free from major structural defects due to noncompliance with the building standards or due to other defects in materials or workmanship not regulated by building standards.

La. R.S. 9:3144.

*      *      *

In this instance, Plaintiffs contend they expressed their desire for a home that could withstand a hurricane. They assert that the representation the home could withstand 140-mile-per-hour winds was the "biggest selling point." In particular, Plaintiffs indicate this was important because Hurricane Katrina destroyed their prior home. Plaintiffs allege that during the formation of the contract, Franklin Homes, Gulf Coast, and NTA represented their home could withstand 140-mile-per-hour winds and that their home was very sturdy. Notably, the Franklin Homes' quotation stated, "BUILD HOUSE TO 140 MPH WIND SPEED ROOF RAFTERS (16" OC)." Gulf Coast heavily advertised the 140-mile-per-hour wind speed. The quotation referenced engineering fees associated with certain items. Plaintiffs state they would not have purchased the home otherwise. Thus, while any claim for an alleged defect in the property is presumably preempted by the NHWA, Plaintiffs stated a cause of action for fraud and intentional misrepresentation in the formation of the contract. The cause of action for fraud or intentional misrepresentation in the formation of the contract is subject to a prescriptive period of one year commencing to run from the day the injury or damage is sustained. La. C.C. art. 3492. When the damage is to immovable property, the one-year prescriptive period commences to run from the day the owner of the immovable acquired, or should have acquired, knowledge of the damage. La. C.C. art. 3493.

Gulf Coast, Franklin Homes, and NTA contend that Plaintiffs should have acquired knowledge of any alleged defect due to the damages incurred by Hurricane Gustav. In discussing constructive notice, this Court has held:

> "Constructive knowledge has been defined by our courts as whatever notice is enough to excite attention and put the injured party on guard or call for inquiry." *Oracle Oil, L.L.C. v. EPI*

14

*Consultants, Div. of Cudd Pressure Control, Inc.*, [20] 11-0151, p. 6 (La. App. 1 Cir. 9/14/11), 77 So.3d 64, 69. "Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry might lead, and such information or knowledge as ought to reasonably put the injured party on inquiry is sufficient to start the running of prescription." *Id.* "In assessing whether an injured party possessed constructive knowledge sufficient to commence the running of prescription, this court's ultimate consideration is the reasonableness of the injured party's action or inaction in light of the surrounding circumstances." *Id.*, [20]11-0151, p. 7, 77 So.3d at 69. "The ultimate issue is the reasonableness of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct.' " [*In Re Med. Review Panel of*] *Lafayette*, [20]03-0457, p. 6 [(La. App. 5 Cir. 10/15/03)], 860 So.2d [86,] 89 [(quoting] *Campo v. Correa*, [20]01-2707, p. 12 (La. 6/21/02), 828 So.2d 502, 511[)].

*In re Hume*, 2014-0844, pp. 7-8 (La. App. 4 Cir. 4/1/15), 165 So.3d 233, 239.

The record herein lacks evidence that Plaintiffs' education and intelligence should have led them to conclude Franklin Homes, Gulf Coast, and/or NTA misrepresented the sturdiness of the home in the formation of the contract based on the damages sustained in Hurricane Gustav. Moreover, we take judicial notice that the top wind speeds during Hurricane Gustav were a maximum 117 per hour, not 140, which is what the home was warranted to withstand.[13] *See Daurbigney v. Liberty Pers. Ins. Co.*, 2018-929, p. 2 (La. App. 3 Cir. 5/9/19), 272 So. 3d 69, 71 n. 1. During Hurricane Gustav, Plaintiffs lost some shingles leading to water intrusion and damages to a limited area. Hurricane Isaac resulted in the roof partially collapsing, as well as water intrusion and mold throughout the entirety of the home. Thus, Hurricane Isaac, and the resulting damage, placed Plaintiffs on notice that the alleged representations were false. The prescriptive period commenced to run after the damage caused by Hurricane Isaac.

**2. La. R.S. 9:2772: "Peremptive period for actions involving deficiencies in surveying, design, supervision, or construction of immovables or improvements thereon"**

15

Gulf Coast, Franklin Homes, and NTA also cited La. R.S. 9:2772 in support of their exceptions of peremption and prescription. Louisiana Revised Statute 9:2772 states, in pertinent part:

A. Except as otherwise provided in this Subsection, no action, whether *ex contractu*, *ex delicto*, or otherwise, including but not limited to an action for failure to warn, to recover on a contract, or to recover damages, or otherwise arising out of an engagement of planning, construction, design, or building immovable or movable property which may include, without limitation, consultation, planning, designs, drawings, specification, investigation, evaluation, measuring, or administration related to any building, construction, demolition, or work, shall be brought ... against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of immovables, or improvement to immovable property, including but not limited to a residential building contractor as defined in R.S. 37:2150.1:

....

(1)(b) If no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, in whole or in part, more than five years after the improvement has been thus occupied by the owner.

(1)(c) If, within ninety days of the expiration of the five-year peremptive period described in Subparagraph (a) of this Paragraph, a claim is brought against any person or entity included within the provisions of this Subsection, then such person or entity shall have ninety days from the date of service of the main demand or, in the case of a third-party defendant, within ninety days from service of process of the third party demand, to file a claim for contribution, indemnity or a third-party claim against any other party.

La. R.S. 9:2772(A)(1)(b)-(c).

Gulf Coast, Franklin Homes, and NTA contend that Plaintiffs filed suit more than five years and ninety days after first occupying the property in November 2006. Thus, they assert that all claims against them were perempted or prescribed by La. R.S. 9:2772(A)(1)(b) and (c).

16

In their brief, Plaintiffs counter that the fraud exception applies. Louisiana Revised Statute 9:2772 also provides that "[t]he peremptive period provided by this Section shall not apply to an action to recover on a contract or to recover damages against any person enumerated in Subsection A of this Section, whose fraud has caused the breach of contract or damages sued upon." La. R.S. 9:2772(H)(1).

In *Thrasher Construction Co.*, this Court indicated the five-year peremptive period does not apply to claims in which fraud caused the alleged breach of contract or damages. 2015-0607, p.15, 197 So.3d at 293. As noted previously, Plaintiffs allege the fraud committed by Franklin Homes, Gulf Coast, and NTA caused the alleged breach of contract and damages. Thus, Plaintiffs' claims asserted pursuant to La. R.S. 9:2772 are not perempted because Plaintiffs allege fraud.

### 3. La. R.S. 9:5607: "Actions against a professional engineer"

NTA claimed peremption based on La. R.S. 9:5607, which is the statute that specifically applies to engineers. Louisiana Revised Statute 9:5607 provides, in pertinent part:

A. No action for damages against any professional engineer ... relative to development plans which have been certified by a professional engineer ... whether based upon tort, or breach of contract, or otherwise arising out of an engagement to provide any manner of movable or immovable planning, construction, design, or building, which may include but is not limited to consultation, planning, designs, drawings, specifications, investigation, evaluation, measuring, or administration related to any building, construction, demolition, or work, shall be brought unless filed in a court of competent jurisdiction and proper venue at the latest within five years from:

....

(2) The date the owner has occupied or taken possession of the improvement, in whole or in part, if no such acceptance is recorded;

....

C. The five-year period of limitation provided for in Subsection A of this Section is a peremptive period within the meaning of Civil Code Article 3458 and in accordance with Civil Code Article 3461, may not be renounced,

17

interrupted, or suspended.

....

E. The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953.

The five-year peremptive period set forth in La. R.S. 9:5607 applies to all claims except fraud and intentional misrepresentation. As set forth above, Plaintiffs allege fraud and intentional misrepresentation. Thus, their claims asserted against NTA are not perempted because they have alleged fraud.

### 4. La. R.S. 51:1409: The Louisiana Unfair Trade Practices Act

Plaintiffs also asserted a claim under LUTPA. Louisiana Revised Statute 51:1409(A) provides, in pertinent part:

Any person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal, as a result of the use or employment by another person of an unfair or deceptive method, act, or practice declared unlawful by R.S. 51:1405, may bring an action individually ... to recover actual damages.

A private action under LUTPA shall be subject to a prescriptive period of one year from the time of the transaction or act giving rise to the cause of action. La. R.S. 51:1409(E). This Court has held the one-year period to be peremptive in *Bottinelli Real Estate, L.L.C. v. Johns Manville, Inc.*, 2019-0619, p. 6 (La. App. 4 Cir 12/27/19), 288 So.3d 179, 185.

Herein, Plaintiffs filed their claim on August 28, 2013. The sale, which constitutes the transaction or act giving rise to their claim, occurred on October 23, 2006. Thus, the trial court correctly determined the LUTPA claim was perempted pursuant to La. R.S. 51:1409(E) because the claim was filed several years after the transaction or act giving rise to Plaintiffs' claim.

Hence, we find that the trial court did not manifestly err in granting the exceptions of peremption and prescription as to all claims, except fraud and intentional misrepresentation, against Gulf Coast, Franklin Homes, and NTA; and its judgment is reasonable in light of the entire record.

*McGaha*, 21-0244, pp. 1-43, 335 So. 3d at 846-68.

We find *McGaha* governs the Petkovichs' appeal. Regarding the claims of

redhibition, this Court found that the peremptive period "in such a situation is set forth in La. C.C. art. 2534(A). Under that provision, an action for redhibition prescribes 'two years from the day of delivery of the thing to the buyer or one year from the day the defect or unfitness was discovered by the buyer, whichever occurs first.'" *McGaha*, 21-0244, p. 33, 335 So. 3d at 863 (quoting La. C.C. art. 2534(A)). This Court found, as the McGahas purchased their modular home on October 23, 2006, and filed suit on August 28, 2013, that the trial court did not err by granting the exceptions of peremption and prescription as to the redhibition claims, as almost seven years elapsed between purchase and filing suit. *Id*., 21-0244, p. 34, 335 So. 3d at 863. This Court further determined that the remaining non-redhibitory tort claims of the *McGaha* plaintiffs, not based on fraud or intentional misrepresentation, were perempted or prescribed because suit was not filed until almost seven years from purchasing the home. *Id*., 21-0244, p. 43, 335 So. 3d at 868.

In the present matter, the Petkovichs purchased their modular home on January 9, 2007, and, it is undisputed, based on the Petkovichs' deposition testimony, that they moved into their new home on May 24, 2007.[2] The Petkovichs then filed suit on August 28, 2013, which was over six years after purchasing and inhabiting their home. Therefore, as in *McGaha*, we find that the trial court did not err by granting the exceptions of prescription and peremption as to all the Petkovichs' claims except those regarding fraud and intentional misrepresentation. Accordingly, that portion of the trial court's judgment is affirmed.

---

[2] May 24, 2007 was the date agreed upon. However, all parties agreed that the Petkovichs inhabited their new home no later than June 24, 2007.

19

## II. *DEFENDANTS' APPEALS*

Gulf Coast filed an appeal asserting that the trial court erred by denying its Motion for Summary Judgment and not dismissing the Petkovichs' fraud and intentional misrepresentations claims. Landry appealed averring the trial court erred by failing to sustain, in full, its Exception of Peremption, and by denying the Motion for Summary Judgment regarding the fraud and intentional misrepresentation claims. Franklin and NTA also appealed and alleged the trial court erred by denying their Exceptions of No Cause of Action and Motions for Summary Judgment, as well as denying their Exception of Peremption in part.

### *JURISDICTION*

"Appellate courts have a duty to determine *sua sponte*, whether the court has proper jurisdiction to consider the merits of an appeal filed in the court." *Joseph v. Wasserman*, 21-0138, p. 3 (La. App. 4 Cir. 12/17/21), 334 So. 3d 413, 416.

All Defendants separately filed for appeals from the trial court's denial of their exceptions of prescription, peremption, and no cause of action, as well as their Motions for Summary Judgment regarding the Petkovichs' fraud and intentional misrepresentation claims. The motions for appeal were filed following the trial court's La. C.C.P. art. 1915(B) certification of the judgment as final. "However, a trial court's certification pursuant to La. C.C.P. art. 1915(B) is not determinative of jurisdiction." *McGaha*, 21-0244, p. 23, 335 So. 3d at 857.

This Court previously held that "La. C.C.P. art. 1915(B)(1) does not authorize a trial court to designate a judgment denying an exception as final for purposes of an immediate appeal." *Id*., 21-0244, p. 24, 335 So. 3d at 858. We further stated, "[a] trial court's certification of an interlocutory judgment as 'final' pursuant to La. C.C.P. art. 1915(B)(1) does not transform the interlocutory

20

judgment into a judgment subject to an immediate appeal." *Id*., 21-0244, pp. 24-25, 335 So. 3d at 858.

However, utilizing our vast discretion, we have converted appeals into applications for supervisory review. *Jacobs v. Metzler-Brenckle*, 20-0585, p. 14 (La. App. 4 Cir. 5/26/21), 322 So. 3d 347, 357, *writ denied*, 21-00911 (La. 10/19/21), 326 So. 3d 257. "[W]e do so only when the motion for appeal has been filed within the thirty-day time period allowed for the filing of an application for supervisory writs under Rule 4–3 of the Uniform Rules, Courts of Appeal."[3] *Delahoussaye v. Tulane Univ. Hosp. & Clinic*, 12-0906, p. 5 (La. App. 4 Cir. 2/20/13), 155 So. 3d 560, 563. Moreover, we also only convert appeals to supervisory writs "where the circumstances indicate that immediate decision of the issue sought to be appealed is necessary to ensure fundamental fairness and judicial efficiency, such as where reversal of the trial court's decision would terminate the litigation." *Id*.

In the instant case, the trial court ruled on March 11, 2021. The trial court designated the judgment as final on March 30, 2021. The Petkovichs' Motion for Devolutive Appeal was filed on April 12, 2021. Landry filed a Petition for Devolutive Appeal on April 14, 2021. NTA filed a Petition for Devolutive Appeal on April 15, 2021. Franklin filed a Petition for Devolutive Appeal on April 15, 2021. Gulf Coast filed a Petition for Devolutive Appeal on April 20, 2021.

---

[3] RULE 4-3. TIME TO FILE; EXTENSION OF TIME, reads, in pertinent part:
The judge who has been given notice of intention as provided by Rule 4-2 shall immediately set a reasonable return date within which the application shall be filed in the appellate court. The return date in civil cases shall not exceed 30 days from the date of notice, as provided in La. C.C.P. art. 1914. In criminal cases, unless the judge orders the ruling to be reduced to writing, the return date shall not exceed 30 days from the date of the ruling at issue. When the judge orders the ruling to be reduced to writing in criminal cases, the return date shall not exceed 30 days from the date the ruling is signed. In all cases, the judge shall set an explicit return date; an appellate court will not infer a return date from the record.

All of Defendants' appeals were filed within thirty days of the designation of the judgment as final.[4]  Moreover, a reversal in favor of any of Defendants would terminate litigation as to one or all Defendants.  Our appellate review also promotes judicial efficiency and fundamental fairness.  Accordingly, we convert Defendants' appeals to applications for supervisory review and proceed with our substantive analysis.

## *LANDRY*

Landry contends the trial court erred by grouping all Defendants together and treating them as one entity.  Landry asserts that although La. R.S. 9:2772(H)(1) contains a fraud exception,[5] the Petkovichs provided no evidence to establish fraud committed by Landry.  Therefore, Landry avers the trial court erred by not dismissing claims for fraud and intentional misrepresentation as perempted.

La. R.S. 9:2772 provides, in pertinent part:

> A. Except as otherwise provided in this Subsection, no action, whether *ex contractu*, *ex delicto*, or otherwise, including but not limited to an action for failure to warn, to recover on a contract, or to recover damages, or otherwise arising out of an engagement of planning, construction, design, or building immovable or movable property which may include, without limitation, consultation, planning, designs, drawings, specification,

---

[4] Gulf Coast's Petition for Devolutive Appeal was not filed within thirty days of the notice of the March 11, 2021 judgment, which creates the argument that it should not be converted to a supervisory writ for failure to comply with the requirement that a notice of intent for filing a supervisory writ be filed within thirty days of the notice of judgment.

       However, the Notice of Appeal from the 25th Judicial District Court notes that Gulf Coast submitted a motion of appeal on April 9, 2021.  Gulf Coasts contends this is because it fax filed a Motion for Devolutive Appeal prior to the April 20, 2021 stamped filing.  Additionally, "the delay for filing an appeal of a partial judgment begins on the day the notice of signing a motion to certify is mailed." *Fraternal Order of Police v. City of New Orleans*, 02-1801, p. 5 (La. 11/8/02), 831 So. 2d 897, 900.  Gulf Coast's Petition for Devolutive Appeal was filed within thirty days of the notice of the signing of the trial court's certification of the judgment as final.  Moreover, Defendants' Motion to Designate Judgment as Final Judgment or Alternatively to Fix Return Date for Supervisory Writ Application was filed on March 26, 2021.  Lastly, "[t]he appellate court shall render any judgment which is just, legal, and proper upon the record on appeal." La. C.C.P. art. 2164.  As such, we convert Gulf Coast's appeal to a writ as well.

[5] See *McGaha*, 21-0244, p. 41, 335 So. 3d at 867.

investigation, evaluation, measuring, or administration related to any building, construction, demolition, or work, shall be brought against any person performing or furnishing land surveying services, as such term is defined in R.S. 37:682, including but not limited to those services preparatory to construction, or against any person performing or furnishing the design, planning, supervision, inspection, or observation of construction or the construction of immovables, or improvement to immovable property, including but not limited to a residential building contractor as defined in R.S. 37:2150.1:

(1)(a) More than five years after the date of registry in the mortgage office of acceptance of the work by owner.

(b) If no such acceptance is recorded within six months from the date the owner has occupied or taken possession of the improvement, in whole or in part, more than five years after the improvement has been thus occupied by the owner.

\* \* \*

B. (1) The causes which are perempted within the time described above include any action:

(a) For any deficiency in the performing or furnishing of land surveying services, as such term is defined in R.S. 37:682, including but not limited to those preparatory to construction or in the design, planning, inspection, or observation of construction, or in the construction of any improvement to immovable property, including but not limited to any services provided by a residential building contractor as defined in R.S. 37:2150.1(9).

(b) For damage to property, movable or immovable, arising out of any such deficiency.

(c) For injury to the person or for wrongful death arising out of any such deficiency.

(d) Brought against a person for the action or failure to act of his employees.

(2) Deficiency, as used in this Section, includes failure to warn the owner of any dangerous or hazardous condition, regardless of when knowledge of the danger or hazard is obtained or should have been obtained.

\* \* \*

H. (1) The peremptive period provided by this Section shall not apply to an action to recover on a contract or to recover damages against any person enumerated in Subsection A of this Section, whose fraud has caused the breach of contract or damages sued upon. The provisions of this Subsection shall be retroactive.

(2) In any action in which fraud is alleged, that issue shall be decided by trial separate from and prior to the trial of any or all other issues. However, if fraud is alleged in nonresidential contracts in an action commenced after the expiration of the five-year period provided by this Section, and the court determines that the allegation was brought in bad faith and no fraud is found, then the party who made the allegation shall be liable for court costs and attorney fees. If fraud is proven, then the party that has committed the fraud shall be liable for court costs and attorney fees.

(3) Fraud, as used in this Section, shall have the same meaning as provided in Civil Code Article 1953.

As we explained in *McGaha*,

"Fraud" is defined as a "misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." La. C.C. art. 1953. In *Yi-Zarn Wang v. Boudreaux*, this Court noted "[t]he two essential elements of fraud are the intent to defraud or gain an unfair advantage and actual or probable damage." 2020-0249, p. 12 (La. App. 4 Cir. 1/15/20), 310 So.3d 730, 738 (quoting *Dutton & Vaughan, Inc. v. Spurney*, 600 So.2d 693, 698 (La. App. 4 Cir. 1992)).

The essential elements of "intentional misrepresentation" are "(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury." *Sys. Eng'g & Sec., Inc. v. Sci. & Eng'g Ass'ns, Inc.*, 2006-0974, p. 3 (La. App. 4 Cir. 6/20/07), 962 So.2d 1089, 1091 (quoting *Goodman v. Dell Publishing Co.*, 1995 WL 428602 (E.D. La.1995)).

21-0244, pp. 37-38, 335 So. 3d at 865.

Mrs. Petkovich testified that she could not recall any specific statements made by Landry while performing work on their land. She then stated that she did not recall any conversations with Landry prior to purchasing their home or regarding the wind load of the home. Mr. Petkovich testified that he never had a conversation with an employee of Landry about their home. He also stated that he never received any information about his home from Landry or relied upon any

24

information from Landry when deciding to purchase the home. Further, Mr. Petkovich stated that he had no information that Landry attempted to deceive him, give him false information, injure him, damage his home, or acted in an "immoral, unethical, oppressive, or unscrupulous way."

Moreover, Landry attached the following requests for admissions to the Exception of Peremption:

> **REQUEST FOR ADMISSION NO. 2**:
> *Please admit that you did not rely on any representation made to you Landry Mobile Home Transporters, Inc. or its employees in reaching your decision to purchase the Manufactured housing at issue in this litigation.*
> **RESPONSE TO REQUEST FOR ADMISSION NO. 2**:
> Request for Admission No 2 is admitted.
>
> **REQUEST FOR ADMISSION NO. 3**:
> *Please admit that there is no written contract between you and Landry Mobile Home Transporters, Inc. relating in any way to the manufactured housing at issue in this litigation.*
> **RESPONSE TO REQUEST FOR ADMISSION NO. 3:**
> Request for Admission No. 3 is admitted.
>
> **REQUEST FOR ADMISSION NO. 4**:
> *Please admit that you have no factual information which establishes that Landy Mobile Home Transporters. Inc. or its employees made any false representations to you before your purchase of the manufactured housing at issue in this litigation.*
> **RESPONSE TO REQUEST FOR ADMISSION NO. 4**:
> Request for Admission No. 4 is admitted.
>
> **REQUEST FOR ADMISSION NO. 6**:
> *Please admit that you have no factual information which establishes that Landry Mobile Home Transporters, Inc. had any involvement with the testing of the manufactured housing at issue to establish, determine or certify its wind load rating.*
> **RESPONSE TO REQUEST FOR ADMISSION NO. 6**:
> Request for Admission No. 6 is admitted.

**REQUEST FOR ADMISSION NO. 8**:
*Please admit that you have no information that Landry Mobile Home Transporters, Inc. or its employees concealed my information from you regarding the attributes of the manufactured housing, including but not limited to its wind load rating.*
**RESPONSE TO REQUEST FOR ADMISSION NO. 8**:
Request for Admission No. 8 is admitted.

**REQUEST FOR ADMISSION NO. 9**:
*Please admit that Landry Mobile Home Transporters, Inc. did not sell the manufactured housing at issue to you.*
**RESPONSE TO REQUEST FOR ADMISSION NO. 9**:
Request for Admission No. 9 is admitted.

In the opposition to the exception, the Petkovichs stated that Landry transported their home in two pre-constructed sections, placed them on piers, leveled, and joined the two sections together. The Petkovichs claimed that "Landry knew, or should have known, that, in order to sustain wind speeds of 140 miles-per-hour, the roof had to be properly constructed with the appropriate materials."

From the evidence reviewed above, the Petkovichs lacked evidence of fraud or intentional misrepresentation by Landry. It is undisputed that Landry did not participate in the formation of the Petkovichs' contract. As we stated in *McGaha*, this connotes that the Petkovichs' claims against Landry were based in "allegations of a deficient performance" and these claims were "perempted by La. R.S. 9:2772." 21-0244, p. 44, 335 So. 3d at 869. Accordingly, in light of our review, the trial court erred by denying Landry's Exception of Peremption in part, as it relates to fraud and intentional misrepresentation. Therefore, Landry's writ is granted and the Petkovichs' fraud and intentional misrepresentation claims against

26

Landry are dismissed with prejudice.

NO CAUSE OF ACTION

Franklin and NTA maintain that the trial court erred by denying their Exceptions of No Cause of Action.

"A peremptory exception of no cause of action questions whether the law extends a remedy against a defendant to anyone under the factual allegations of a petition." *White v. New Orleans Ctr. for Creative Arts*, 19-0213, p. 7 (La. App. 4 Cir. 9/25/19), 281 So. 3d 813, 819. "An exception of no cause of action tests 'the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading.'" *Moreno v. Entergy Corp.*, 10-2281, p. 3 (La. 2/18/11), 62 So. 3d 704, 706 (quoting *Everything on Wheels Subaru, Inc. v. Subaru South, Inc.*, 616 So. 2d 1234, 1235 (La. 1993)). Further,

> "In deciding an exception of no cause of action a court can consider only the petition, any amendments to the petition, and any documents attached to the petition." *Green*, 2017-0695, p. 4, 248 So.3d at 453(quoting *2400 Canal, LLC v. Bd. of Sup'rs of Louisiana State Univ. Agr. & Mech. Coll.*, 2012-0220, p. 7 (La. App. 4 Cir. 11/7/12), 105 So.3d 819, 825). "A court cannot consider assertions of fact referred to by the various counsel in their briefs that are not pled in the petition." *Id.* "The grant of the exception of no cause of action is proper when, assuming all well pleaded factual allegations of the petition and any annexed documents are true, the plaintiff is not entitled to the relief he seeks as a matter of law." *Id.* Further, "any doubt must be resolved in the plaintiffs' favor." *Id.* However, the mere conclusions of the plaintiff unsupported by facts do not set forth a cause of action. *Green*, 2017-0695, p. 4, 248 So.3d at 453-54 (citing *831 Bartholomew Investments–A, L.L.C. v. Margulis*, 2008-0559, p. 10 (La. App. 4 Cir. 9/2/09), 20 So.3d 532, 538).

*White*, 19-0213, pp. 7-8, 281 So. 3d at 819.

Appellate courts review a trial court's ruling on an exception of no cause of action *de novo* because the exception raises a question of law. *Ocwen Loan*

*Servicing, LLC v. Porter*, 18-0187, p. 3 (La. App. 4 Cir. 5/23/18), 248 So. 3d 491, 495.

> Our *de novo* review "is limited to reviewing the four corners of the petition to determine whether on its face the petition states a cause of action." *Id.* "[A]ll well-pleaded facts in the petition are accepted as true for purposes of determining the issues raised by an exception of no cause of action. The mover bears the burden of proving that the petition states no cause of action; and *de novo* review does not take into consideration whether the party will be able to prevail on the merits." *Id.*

*Id.* (quoting *Boyd v. Cebalo*, 15-1085, p. 2 (La. App. 4 Cir. 3/16/16), 191 So. 3d 59, 61).

In their Petition, the Petkovichs asserted that "Franklin had advertised as being able to withstand winds of up to one hundred forty (140) miles per hour." Further, the Petition alleged:

**XVIII.**

Also during the design and manufacture of Petitioners' Home, Franklin had an engineering firm, NTA, confirm that both the design and manufacturing of Plaintiffs' Home (prior to leaving Franklin's facility) allegedly met the relevant building codes and certain design loads, such as the aforementioned one hundred forty (140) miles per hour wind rating.

\*     \*     \*

**XX.**

Also upon information and belief. Gulf Coast, Franklin, Landry, and NTA had knowledge of these vices and defects in Petitioners' Home, but failed to disclose this information to the Petitioners at the time of the purchase and, in fact, fraudulently and falsely represented that the Home did not contain the defects.

**XXI.**

Gulf Coast, Franklin, Landry, and NTA acted fraudulently by informing Petitioners at the time of purchase that their Home could sustain wind loads of one hundred forty (140) miles per hour.

**XXII.**

Petitioners would not have purchased the Home had they known of the vices and defects in its design,

28

manufacture, construction and/or assembly.

*       *       *

## XXXIII.

Upon information and belief, Gulf Coast, Franklin, Landry, and NTA supplied products to the Petitioners that it knew or should have known were defective, and knew could not be repaired. Gulf Coast, Franklin, Landry, and NTA made intentional or negligent misrepresentations regarding the home's ability to withstand high winds and failed to disclose problems with this modular home model.

*       *       *

## XLIII.

Petitioners reaver and reallege all the preceding allegations of the preceding paragraphs.

## XLIV.

Gulf Coast, Franklin, Landry, and NTA made fraudulent misrepresentations and omissions to Petitioners about the design, manufacture, and structural integrity of Petitioners' Home, including without limitation, misrepresenting that the home could sustain wind loads of one hundred forty (140) miles per hour.

## XLV.

As a result of their actions and inactions, Gulf Coast, Franklin, Landry, and NTA are liable to Petitioners for all damages resulting therefrom, including, but not limited to: rescission of the sale or specific performance; *quanti minoris* damages; consequential and/or resultant damages; loss of contents and other personal property; inconvenience and displacement; mental anguish; loss of enjoyment of life; personal injuries resulting from mold exposure and/or unsafe conditions at the property; exemplary/punitive damages; interest, attorneys' fees, and costs; and any and all other damages reasonable upon the premises, and proven at trial.

The trial court, upon reviewing the Petition, found:

Franklin Homes and NTA are the only defendants asserting this particular exception. They argue that plaintiffs failed to allege sufficient facts to state a cause of action under the various legal theories asserted by plaintiffs. The only claims that plaintiffs have remaining, after the exceptions of peremption and prescription were sustained in part, are the claims based on fraud and intentional misrepresentation.

Plaintiffs alleged that defendants made fraudulent misrepresentations and omissions regarding the design,

> manufacture, and structural integrity of Petitioners'
> Home, including without limitation, misrepresenting that
> the home could sustain wind loads of 140 miles per hour.
>
> An exception of no cause of action questions
> whether the law extends a remedy against the defendant
> to anyone under the factual allegations of the petition.
> Scott v. Zaheri, 2014-0726 (La. App. 4 Cir. 12/3/14), 157
> So.3d 779. The purpose of the exception is not to
> determine whether the plaintiff will prevail at trial, but to
> ascertain if a cause of action exists. Bruzeau v. Wells
> Fargo Bank, N.A.. 2012-0075 (La. App. 4 Cir. 8/2/12),
> 99 So.3d 1010.
>
> Plaintiffs sufficiently plead a cause of action for
> fraud and intentional misrepresentation based on their
> allegations concerning the representations of the modular
> home's wind rating.

Upon our *de novo* review, we agree with the trial court. The Petkovichs

sufficiently pled claims for fraud[6] and intentional misrepresentation.[7] As such,

Franklin and NTA's writs are denied as it pertains to the Exceptions of No Cause

of Action.

### SUMMARY JUDGMENT

The remaining defendants, Gulf Coast, Franklin, and NTA filed appeals

contending the trial court erred by denying their Motions for Summary Judgment.

---

[6] As we stated in *McGaha*:

> "Fraud" is defined as a "misrepresentation or a suppression of the
> truth made with the intention either to obtain an unjust advantage
> for one party or to cause a loss or inconvenience to the other. Fraud
> may also result from silence or inaction." La. C.C. art. 1953. In *Yi-
> Zarn Wang v. Boudreaux*, this Court noted "[t]he two essential
> elements of fraud are the intent to defraud or gain an unfair
> advantage and actual or probable damage." 2020-0249, p. 12 (La.
> App. 4 Cir. 1/15/20), 310 So.3d 730, 738 (quoting *Dutton &
> Vaughan, Inc. v. Spurney*, 600 So.2d 693, 698 (La. App. 4 Cir.
> 1992)).

21-0244, p. 37, 335 So. 3d at 865.

[7] Again, from *McGaha*:

> The essential elements of "intentional misrepresentation"
> are "(1) a misrepresentation of material fact, (2) made with the
> intent to deceive, (3) causing justifiable reliance with resulting
> injury." *Sys. Eng'g & Sec., Inc. v. Sci. & Eng'g Ass'ns, Inc.*, 2006-
> 0974, p. 3 (La. App. 4 Cir. 6/20/07), 962 So.2d 1089, 1091
> (quoting *Goodman v. Dell Publishing Co.*, 1995 WL 428602 (E.D.
> La.1995)).

21-0244, pp. 37-38, 335 So. 3d at 865.

For the following reasons, we find their assertions lack merit and deny the writs filed by Gulf Coast, Franklin, and NTA.

### *Standard of Review*

"The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969." La. C.C.P. art. 966(A)(2). "[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). "The burden of proof rests with the mover." La. C.C.P. art. 966(D)(1). However, "if the mover will not bear the burden of proof at trial . . . the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim." *Id*. Instead, the mover must "point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." *Id*. Then, "[t]he burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Id*.

"Appellate courts review motions for summary judgment *de novo* under the same criteria that govern the trial court's consideration of whether summary judgment is appropriate." *Wood v. Del Giorno*, 06-1612, p. 3 (La. App. 4 Cir. 12/19/07), 974 So. 2d 95, 98.

### *Gulf Coast*

Gulf Coast's application for supervisory review seeks review of the trial court's denial of its Motion for Summary Judgment. Specifically, Gulf Coast

contends the Petkovichs cannot carry their burden of proof for the fraud and intentional misrepresentation claims.

In support, Gulf Coast submitted Mrs. Petkovichs' deposition wherein she stated that Gulf Coast knew their home was not built to the specifications it represented. She testified, "I guess I just feel that it's possible that they knew things weren't the way that it should have been." She further stated that "[m]y understanding is that the home should be able to withstand 140-mile-per-hour wind. . . . I guess my understanding was that at 140-mile-per-hour wind that I shouldn't have much damage. I guess, you know, just was able to withstand 140-miles-an-hour wind." However, Mrs. Petkovich could not recall the exact language used by the Gulf Coast employee. Mr. Petkovich stated in his deposition testimony that he did not recall anything the salesperson or other Gulf Coast employees said. Likewise, he did not recall discussing the alleged 140 miles per hour wind rating prior to purchasing the home.

In opposition, the Petkovichs submitted additional deposition excerpts of the Petkovichs. Mrs. Petkovich stated "Well, that's what the paperwork we had said. That the homes were built so it would withstand 140-mile-an-hour wind. That was one of the things that were brought to our attention at the time of the sale; and, you know, we were replacing a home that was from a hurricane." Although, she admitted that the documents did not contain the word "withstand," but that is what she understood the 140 miles per hour rating to mean.

The Petkovichs also attached a report from Gurtler Bros. Consultants, Inc., an engineering consulting company, wherein the expert, Michael Gurtler – the president and operator, stated that after reviewing the damage to the Petkovichs' home, the calculations may likely result in a "constructive total loss." The Gurtler

report summarized their conclusions regarding issues with the Petkovichs' home:

The roof is constructed at the plant in fold-down sections. For transportation, the roof is folded down and once on site, the roof is unfolded to form a gable roof. The roof failed at each of the folded joints. The roof covering was damaged and failed prematurely due to defective installation. Water that landed on the roof above any joint was allowed to flow into the house through the joint. Additionally, we have inspected over 10 homes built by die same manufacturer in the same time frame and installed in this area. After reviewing the installation instructions from the manufacturer, we determined that the manufacturer was to ship 15# roofing felt for use at these joints. We consistently found that a thin paper material, not suitable for use as roofing felt, was substituted for the felt specified by the manufacturer. Every home we looked at suffered water intrusion damages as a result of similar roof failures and excess water intrusion at the hinged joint.

The OSB sub-decking and exterior wall sheathing that got wet as a result of the subsequent rainwater intrusion must be removed and replaced, as it has lost its structural integrity and is promoting mold growth.

The building framing is clearly shifted and out of position due to wind effects caused by the storm. It should also be noted that the home was constructed to meet a wind load of 140 miles per hour. Sustained winds in this area during Hurricane Isaac were well below this threshold.

Numerous damaged and poor quality roof trusses were observed. The shifted framing will impair the ability of the structure to resist future wind events. Substantial gusset plates will have to be added to the deformed and damaged connections in the attic to restore structural integrity. The connections will have to be designed and stamped by a Louisiana Licensed Professional Engineer. The shims used on top of some of the foundation piers are not installed in accordance with manufacturer's installation instructions. Improper shimming along with defective materials and construction in the modular home caused the house to shift.

Considerable water entered the house as result of roof damages caused by defective installation. Severe interior damages were noted in most interior rooms. The EPA guidelines for remediation after a moisture intrusion event indicate that any absorbent materials (sheetrock, insulation and the kitchen or bathroom cabinet frames)

must be removed and replaced, any semi-absorbent materials (wood framing and plywood) must be dried, cleaned and sealed with an anti-fungicidal treatment and any non-absorbent materials must be cleaned.

Under-floor insulation is kept in place with a vapor barrier. Once the insulation was saturated due to the leakage of the storm, the insulation kept the water in contact with the floor framing system and subfloor, preventing the house from drying. We inspected this house over 7 weeks after the storm passed and water could still be found running from the vapor barrier when it was punctured.

When viewing the cement board siding, we noted that there does not appear to be butt flashing under the siding, as required by the manufacturer. Gaps noted at numerous siding seams suggest twisting and racking of the house and not long-term foundation settlements. Additionally, during our inspections of the other modular homes with cement board siding installed, we noted that fasteners were installed to a depth where the nail head almost penetrates the board. This is a violation of the manufacturer's installation instructions and contributed to the siding being weaker than designed and contributed to its failure.

Because the house could not be properly dried, there is not one piece of wood framing inside this house that was not subjected to excess moisture either in die form of direct rainwater or elevated humidity. In our opinion, based on the racking and damages to the structure and the remediation required by the EPA guidelines, the costs to repair this house will be substantial and could approach the point of being a constructive total loss. Should you request, we can provide an adjustment in Xactimate for the damage repair costs for clarification.

If you have any questions regarding this report or need further assistance, please call. This report is an instrument of professional service and is the property of Gurtler Bros. Consultants, Inc. This report is strictly and solely a professional opinion of the subject property based on the observations made on the day of our Inspection.

Any third party use of this report is prohibited. The scope of this report is limited to the above items. This report does not include environmental aspects or building code compliance.

Further, excerpts from Michael Gurtler's deposition in a similar matter with

different plaintiffs was attached, wherein Mr. Gurtler discussed some deficiencies found in other modular homes in the area.

***Franklin***

Like Gulf Coast, Franklin's application for supervisory review seeks review of the trial court's denial of its Motion for Summary Judgment regarding the Petkovichs' claims of fraud and intentional misrepresentation. Specifically, Franklin maintains the trial court erred "because the evidence demonstrated that the only statements attributable to Franklin were neither fraudulent nor intentional misrepresentations and Plaintiffs failed to present any competent evidence of intent on the part of Franklin to obtain an unjust advantage or cause a loss or inconvenience to Plaintiffs."

In support, Franklin presented excerpts from the Petkovichs' depositions. Mrs. Petkovich contends she and her husband partook in conversations at Gulf Coast about the home being about to withstand 140 mile per hour winds. She stated that she did not have any verbal communications with anyone from Franklin prior to purchasing the home. When Mrs. Petkovich was questioned regarding the documents from Franklin that included language about 140 mile-per-hour winds, she could not say that she relied upon the documents to purchase her home. However, she testified that she believed Franklin had knowledge of what damage her home could sustain during a storm with less than 140 mile per hour sustained winds, such as Hurricane Isaac. Mrs. Petkovich did not reach out to anyone at Franklin prior to purchasing the home.

Further, a document entitled "Quotation" from Franklin included the statement "ADD 140 MPH WIND" for $1,000.00. The "data plate" document also included "140MPH" next to "Wind Speed MPH" describing some specifications of

the home.  Franklin also attached excerpts from Mr. Gurtler's deposition from another modular home lawsuit.  He explained that a 140 mile-per-hour standard does not mean a home will experience no damage at all, but is a "theoretical design standard."

In opposition, the Petkovichs submitted much of the same excerpts of depositions and documents as Franklin.  Mrs. Petkovich stated that one of the reasons they selected a Franklin home was "I guess it was just the style of the house, and the fact that it was supposed to withstand the -- you know, about the hurricane winds."  In addition, the excerpt contained the following colloquy:

> Q: In your -- in your Petition, you make an allegation about 140-miles-per-hour winds. Can you tell me about that?
> A. Well, that's what the paperwork we had said. That the homes were built so it would withstand 140-mile-an-hour wind. That was one of the things that were brought to our attention at the time of the sale; and, you know, we were replacing a home that was from a hurricane.
> Q. And that's the basis of the allegation in your Petition?
> A. Right. That – that's what the homes were supposed to be able to withstand -- 140-miles-an-hour wind.

Again, Mrs. Petkovich stated that she understood that to mean the home could withstand 140 mile per hour winds.  However, Mrs. Petkovich admitted she had no verbal communication with Franklin prior to purchasing the home.

The Gurtler report again opined that the Petkovichs' home could be a "constructive total loss" and included the conclusions discussed in the Gulf Coast section above.  Further, Mr. Gurtler, in a deposition from another modular home lawsuit, responded thusly when asked if Franklin, NTA, Landry, or Affordable Homes committed fraud:

> A. Okay. There's certainly some inconvenience to others, meaning that these homeowners were tremendously inconvenienced because their houses were

36

basically destroyed in a storm that was significantly below the wind rating where their house would be expected to be destroyed. So from that point of view I think there is a loss and inconvenience to these homeowners.

Suspress [sic] -- suppression of the truth or misrepresentation, I don't -- I think a misrepresentation could be interpreted as these people bought a home that was supposed to survive to a certain wind load. You have a storm coming that's clearly well below that wind load, you would not expect widespread and catastrophic damages based on that storm forecast.

Now every storm can have wide variations of loads in a particular area because there's tornados involved and there's a lot going on from a meteorology point of view. But in this case we had 10 or so homes in 10 or so different locations that all suffered the same basic damage. So I'm thinking that the problem that was experienced by these homeowners is more of a design and construction issue, than 10 different places in South Plaquemines Parish each got hit by tornados at -- at the passage of this relatively minor storm. But in storms we all know anything is possible.

I think the misrepresentation might be that the homeowners were told this house was stronger and would survive better in minor storms than clearly these houses did in this relatively minor storm. Does that answer your question?

### NTA

NTA contends the trial court erred by denying the Motion for Summary Judgment as it related to the Petkovichs' fraud and intentional misrepresentation claims because the Petkovichs "produced no proof of NTA's Intent to harm them nor that NTA said their home could 'withstand' 140 MPH winds."

NTA submitted Mrs. Petkovichs' deposition wherein she stated that she had no verbal communication with NTA prior to purchasing the home. When asked about NTA specifically, Mrs. Petkovich stated:

Q. All right. Did you believe that anyone at NTA intended for the damages that occurred during Hurricane Isaac to occur?

A. Again, I'm not saying they intended, but there is a possibility of they had knowledge what could have happened in the situation.

Mr. Petkovich stated that he did not have verbal communication with anyone from NTA before or after purchasing the home.

NTA also attached the testimony of David Tompos, the general manager and vice-president of NTA, from another plaintiffs' suit against Defendants. He stated he was a licensed and registered engineer in Louisiana. Further, excerpts from Mr. Gurtler's deposition in another matter was attached, wherein he was questioned by counsel for NTA. He stated that while he received an engineering degree, he was not a licensed professional engineer.

The Petkovichs opposed and attached excerpts from their depositions including the information submitted against Gulf Coast and Franklin. They also attached the sales documents, including a letter from NTA. The NTA letter stated:

> This is to confirm that NTA, Inc., inspected the above referenced model while being built in Franklin Homes production facility. NTA, Inc. also reviewed and approved the model plans for SN#13219 on December 12, 2006. The plan review and in plant inspection confirmed that the modular unit was built to the following codes:
>
> 2003 International Residential Code
> 2002 National Electrical Code
>
> The plans were designed and approved for the following design loads:
>
> 20 psf Roof Live Load
> 40 psf Floor live Load
> 140 mph Wind - Exposure C
> Seismic Design Category C

Also, the data plate specification sheet for the Petkovich home stated that the design was approved by NTA with "140MPH" listed as the "Wind Speed MPH."

The Petkovichs also attached portions of Mr. Gurtler's deposition testimony from another matter regarding his opinion on whether fraud was committed, block quoted above in the section on Franklin. The Gurtler conclusions from the report were also included.

### *Summary Judgment Application*

In denying Gulf Coast's, NTA's, and Franklin's Motions for Summary Judgment, the trial court stated:

> All four defendants moved for summary judgment arguing that there are no genuine issues of material fact that there is any factual basis for plaintiffs' claims against them. Defendants and plaintiffs submitted copious amounts of evidence to support their respective positions.
>
> This case boils down to a credibility call as to what the plaintiffs were or were not told about the 140 mile per hour wind rating for their modular home. Credibility determinations are unsuited for a motion for summary judgment. Alfred Conhagen, Inc, of La. v. Ruhrpumpen, Inc., 2018-0414 (La. App. 4 Cir. 12/19/18), 262 So.3d 306, writ denied, 2019-0126 (La. 3/18/19), 267 So.3d 94. In ruling on a motion for summary judgment, the trial court cannot consider the merits, evaluate testimony, or weigh evidence. Suire v. Lafayette City-Parish Consol. Gov't, 2004-1459 (La. 4/12/05), 907 So.2d 37.

We agree. Our *de novo* review of the Petkovichs' claims against Gulf Coast, NTA, and Franklin reveal genuine issues of material fact and credibility issues as to what the Petkovichs were told, what they relied upon, and juxtaposed expert testimony.[8] "[A] motion for summary judgment is not suitable for the disposition of cases requiring a judicial determination of subjective facts such as intent, knowledge, motive, malice, or good faith." *Ballex v. Naccari*, 95-1339, p. 2 (La. App. 4 Cir. 9/15/95), 663 So. 2d 173, 175. Additionally, we are prevented from

---

[8] Additional expert testimony taken by deposition after the hearing in lieu of live testimony at the hearing. The depositions were not discussed herein because the depositions were not attached in support of or in opposition to the Motions for Summary Judgment.

weighing evidence.  *Coto v. J. Ray McDermott, S.A.*, 99-1866, p. 4 (La. App. 4 Cir.

10/25/00), 772 So. 2d 828, 830.  Accordingly, Gulf Coast's, NTA's, and Franklin's

writs are denied.[9]

---

[9] Gulf Coast, NTA, and Franklin also assert their Motions for Summary Judgment should have been granted because the Petkovichs were put on constructive notice after the previous Hurricane Gustav, which would mean the fraud and intentional misrepresentation claims were prescribed as well.  We addressed this issue while addressing the Petkovichs' appeal and examined the same issue in *McGaha*, as follows:

> Gulf Coast, Franklin Homes, and NTA contend that Plaintiffs should have acquired knowledge of any alleged defect due to the damages incurred by Hurricane Gustav. In discussing constructive notice, this Court has held:
>
> > "Constructive knowledge has been defined by our courts as whatever notice is enough to excite attention and put the injured party on guard or call for inquiry." *Oracle Oil, L.L.C. v. EPI Consultants, Div. of Cudd Pressure Control, Inc.*, [20] 11-0151, p. 6 (La. App. 1 Cir. 9/14/11), 77 So.3d 64, 69. "Such notice is tantamount to knowledge or notice of everything to which a reasonable inquiry might lead, and such information or knowledge as ought to reasonably put the injured party on inquiry is sufficient to start the running of prescription." *Id.* "In assessing whether an injured party possessed constructive knowledge sufficient to commence the running of prescription, this court's ultimate consideration is the reasonableness of the injured party's action or inaction in light of the surrounding circumstances." *Id.*, [20]11-0151, p. 7, 77 So.3d at 69. "The ultimate issue is the reasonableness of the patient's action or inaction, in light of his education, intelligence, the severity of the symptoms, and the nature of the defendant's conduct.' " [*In Re Med. Review Panel of*] *Lafayette*, [20]03-0457, p. 6 [(La. App. 5 Cir. 10/15/03)], 860 So.2d [86,] 89 [(quoting] *Campo v. Correa*, [20]01-2707, p. 12 (La. 6/21/02), 828 So.2d 502, 511[)].
>
> *In re Hume*, 2014-0844, pp. 7-8 (La. App. 4 Cir. 4/1/15), 165 So.3d 233, 239.
>
> The record herein lacks evidence that Plaintiffs' education and intelligence should have led them to conclude Franklin Homes, Gulf Coast, and/or NTA misrepresented the sturdiness of the home in the formation of the contract based on the damages sustained in Hurricane Gustav. Moreover, we take judicial notice that the top wind speeds during Hurricane Gustav were a maximum 117 per hour, not 140, which is what the home was warranted to withstand.[13] See *Daurbigney v. Liberty Pers. Ins. Co.*, 2018-929, p. 2 (La. App. 3 Cir. 5/9/19), 272 So. 3d 69, 71 n. 1. During Hurricane Gustav, Plaintiffs lost some shingles leading to water intrusion and damages to a limited area. Hurricane Isaac resulted in the roof partially collapsing, as well as water intrusion and mold throughout the entirety of the home. Thus, Hurricane Isaac, and the resulting damage, placed Plaintiffs on notice that the alleged

## *DECREE*

For the above-mentioned reasons, we find the trial court did not err by finding the Petkovichs' claims against Defendants, except for those regarding fraud and intentional misrepresentation, were preempted or prescribed. The trial court properly dismissed those claims in line with our previous jurisprudence, *McGaha*.

Upon reviewing, we find Defendants' appeals necessitated conversion to applications for supervisory review.

Finding the Petkovichs' claims against Landry were based in "allegations of a deficient performance," we find all of the Petkovichs' claims against Landry were preempted. Therefore, we grant Landry's writ and the Petkovichs' fraud and intentional misrepresentation claims against Landry are dismissed with prejudice.

We find the Petkovichs sufficiently pled claims for fraud and intentional misrepresentation. As such, Franklin and NTA's writs are denied as to the Exceptions of No Cause of Action. Lastly, we find genuine issues of material fact remain as to the Petkovichs' claims of fraud and intentional misrepresentation against Gulf Coast, NTA, and Franklin. Questions surrounding credibility, juxtaposed expert testimony, intent, and motive are not suitable for summary judgment. Therefore, we deny Gulf Coast, NTA, and Franklin's writs regarding their Motions for Summary Judgment.

**AFFIRMED IN PART; REVERSED IN PART; WRIT GRANTED IN PART; WRITS DENIED**

---

representations were false. The prescriptive period commenced to run after the damage caused by Hurricane Isaac.

*McGaha*, 21-0244, pp. 38-40, 335 So. 3d at 865-66. Accordingly, these assertions lack merit.